## Case No. 16,455.

UNITED STATES v. TESCHEMACHER et al.

[Hoff. Dec. 84.]

District Court, D. California. Sept. 21, 1866.

MEXICAN LAND GRANT—EVIDENCE—ARCHIVE TESTIMONY.

[1. A petition, appearing in an expediente, on behalf of four persons for 32 leagues, cannot be considered as preliminary to a grant of 16 leagues to two of such persons.]

[2. An expediente not placed among the records till 1855 is not archive testimony such as is indispensable to the confirmation of an alleged grant.]

[This was a claim by Henry F. Teschemacher, Joseph P. Thompson, George H. Howard, and Julius K. Rose for a tract of land known as "La Laguna de Lup Yomi." The board of land commissioners rejected the claim, but, on appeal to the district court, their decision was reversed, and the claim allowed. See Case No. 13,843. An appeal was taken to the supreme court, where the decree of the district court was reversed,—22 How. (63 U. S.) 392,—and the cause remanded for further evidence and examination.]

HOFFMAN, District Judge. On the 4th January, 1853, the claimants petitioned the board for a confirmation of their claim to the place known as Lup Yomi, containing fourteen square leagues, more or less. In support of this claim a grant was produced, dated September 5th, 1844, purporting to be signed by Manuel Micheltorena, and conveying to Salvador and Juan Antonio Vallejo the land known as the Laguna de Lup Yomi,

1 [Reported by Hon. William Cranch, Chief Judge.]

to the extent of sixteen square leagues, "as shown by the respective map." On the map which accompanied this grant, a large district of country, embracing the whole of what is now known as Clear Lake, together with a considerable tract around it, was rudely delineated. No evidence whatever from the archives was offered, and the memorandum at the end of the grant, to the effect that note of it had been taken on the proper book, was found on consulting the book to be false. The proofs of possession and occupation were also unsatisfactory. The decision of the district court was therefore reversed, and the cause remanded for further testimony. It is now submitted on the testimony that has since been taken in this court.

It is contended that the archive evidence, the absence of which was one of the chief reasons assigned by the supreme court for refusing to confirm the claim, has since been supplied. It appears that in 1855 one José Santos Berreyesa deposited in the surveyor general's office an expediente purporting to contain a concession, and the proceedings preliminary thereto, of the place called Lup Yomi. This document is stated by Vicente P. Gomez to have been in the office of the secretary of state, at Monterey, from its date up to July, 1846, when it was taken to the custom house, with other papers. It then passed into the possession of the witness (but how, or by what right, is not explained), and so remained until 1854, or 1855, when Mr. Domingo Marks, at the instance, as he said, of José Santos Berreyesa, procured the loan of it. Before giving it to Marks, Dias, as he says, tore off the signature of Manuel Micheltorena to the decree of concession. The only reason he assigns for so doing is, that "he very much feared he would never see it again." The document thus mutilated was no doubt soon after deposited in the archives by Berreyesa.

The expediente thus presented to our notice contains: 1st. A petition signed Salvador Vallejo, and dated May 23d, 1844, soliciting for himself, and for Don Juan Antonio Vallejo, Rosalia Olivera and Marcos Juarez, "who join with him in the petition, the tract of land situated to the south of the lake, which lies at the distance of forty leagues, a little more or less, to the north of this place" (Sonoma), and he asks, that as these individuals are in company with him, there be granted eight square leagues to each, "omitting for the present to furnish the corresponding map, it being impossible to have one correctly made for want of the necessary knowledge of the land." On the 31st of May, 1844, this petition was referred to the secretary, with directions to obtain the necessary informes. It was accordingly passed by Jimeno, on the 20th of June, 1844, to the second justice of Sonoma, for his report. On the 24th July, 1844, the justice, Cayetano Juarez, reported in favor of the petition of "the citizens Salvador Vallejo, Juan Antonio Vallejo, Rosalia Olivera and Marcos Juarez." On the 21st August, Francisco Arce, chief clerk, Jimeno being ill, as the report states, transmits these informes to the governor with a recommendation that the grant be made. Then follows in the expediente a decree of concession, dated August 30th, 1844, purporting to grant in property to the petitioners, the lands they ask for "according to the map." This decree is in the handwriting of Vicente P. Gomez, and the signature of the governor, if ever attached to it, has been torn off.

Such are the contents of the expediente, now for the first time offered in evidence. Two questions are thus presented: 1. Is the expediente admissible in evidence? 2. What is its effect as proof in the case?

1. The claim presented to the board and afterwards submitted to the supreme court was for fourteen leagues of land, alleged to have been granted to Salvador and Juan Antonio Vallejo on the 5th September, 1844. The land thus granted was stated by Salvador Vallejo himself to be a well known tract, embraced within great natural boundaries, which he had pointed out to a surveyor, and which were found to contain twelve leagues. This claim was the only one presented to the supreme court. That tribunal, finding the evidence unsatisfactory, remanded the case for further proofs. The expediente now produced shows, if it shows anything, a concession made, not on the 5th of September, but on the 30th of August. The grantees are not the Vallejos alone, but two other persons besides, and the land granted is not sixteen square leagues, but thirty-two. So far from this evidence being further evidence in support of the claim and titulo presented to the supreme court, it seems almost incompatible with the genuineness of the latter. If, on the 30th of August, the governor made a concession of thirty-two leagues to the Vallejos, Rosalia Olivera and Marcos Juarez, it seems highly improbable that a few days afterwards he would have granted one-half of the same land to the Vallejos alone. No explanation of this circumstance is offered by Vallejo, who, in his deposition, taken in support of the titulo of September 5th, speaks of a petition by himself and his brother, and a grant to them of sixteen leagues, omits all mention of his application for thirty-two leagues for himself and his brother, Olivera and Juarez, of the proceedings thereon, and of the alleged concession found in the expediente. These facts serve to corroborate the testimony of Mr. Hopkins, who swears that in his opinion (and it is entitled to great consideration, the signature of Micheltorena to the grant of September 5th is spurious. It appears to be thought by the counsel for the claimants that the expediente can be treated as the record of the proceedings preliminary to the grant of September 5th. I am unable to perceive how it can be so regarded. Vallejo distinctly asserts that he petitioned for

himself and his brother, and obtained the grant of September 5th for sixteen leagues. No such petition is found in the archives. The petition in the expediente is on behalf of four persons, and for thirty-two leagues of land, and that petition, if the expediente be genuine, was granted. I cannot see how these proceedings can be considered preliminary to a grant of sixteen leagues to the two Vallejos alone. The title, therefore, to which alone the expediente can give any support, would seem inconsistent with that heretofore presented. It differs from it in every particular. It bears a different date, is in favor of different persons, and is for a different tract of land. It may well be doubted whether, under the order remanding the cause for further proofs as to the genuineness of the title submitted to the supreme court, evidence can now be received of a new, independent, and apparently inconsistent title.

2. But it is not necessary to rest the case on this point, for it is clear that the expediente utterly fails to meet the requirement of the vigorous, but just and salutary, rule of the supreme court which exacts archive testimony as indispensable to a confirmation. The expediente in no sense can be called archive testimony. It was not placed among the records until 1855. It comes, therefore, from private custody, as much so as if now produced by Gomez himself. That it ever was in the secretary of state's office we have no evidence except the unsupported testimony of Gomez. No other witness pretends to have seen it there, and Salvador Vallejo, when testifying in support of the titulo of September 5th, suppresses all mention of it, or of the proceedings it purports to record. It is hardly necessary to observe that the character of Gomez is too notorious to permit the court to place any reliance upon his uncorroborated testimony. But, even if this expediente had been found in the archives, it would fail to afford the requisite evidence in support of the claim. That a petition for thirty-two leagues was presented, and some orders of reference and informes made thereon, may be admitted. But that these proceedings terminated in a decree of concession, the expediente furnishes but slight evidence. The signature of Micheltorena to the pretended decree of concession has been torn off. We cannot therefore ascertain its genuineness by inspection. The only evidence that it was ever attached to the concession is the statement of Gomez. But the whole decree is in Gomez' handwriting. The expediente, in all probability clandestinely abstracted by him from the archives, if it was ever there, remained in his possession during eight years. If, as is quite possible, it contained originally only the petition, orders of reference and reports, he could at any time have written the decree of concession and signed Micheltorena's name. That he did not do so we have only his own word; but the hypothesis may account for his tearing off the signature when he gave the document to Marks. The reason assigned by him, viz., that he was afraid he might never see it again, is absurd. We thus see not only that this expediente does not come from the archives, but that the genuineness of the document, without which the expediente is valueless as proof, rests upon the testimony of Gomez alone. If in addition to this we consider the total silence of Vallejo and other witnesses as to every fact supposed to be disclosed by this expediente, and that the claim to a confirmation was rested upon another grant, which must now be abandoned, together with the fact that no note of either exists in the Toma de Razon, Jimeno's Index, or any other document found among the archives, we are led to the conclusion that the proofs of the genuineness of the thirty-two league grant are at least as defective and unsatisfactory as those heretofore offered in support of the sixteen league titulo, and which the supreme court declared to be insufficient. Other objections to the confirmation of this claim might be urged. The evidence wholly fails to identify the thirty-two leagues now alleged to have been conceded, or to show in what part of the immense tract embraced within the limits of the diseño it is situated. These objections, however, are of minor importance, for on the grounds already stated it is clear that the claim must be rejected.